Amy M. v Leland C. (2005 NY Slip Op 51021(U))

[*1]

Amy M. v Leland C.

2005 NY Slip Op 51021(U)

Decided on June 20, 2005

Family Court, Monroe County

O'Connor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 20, 2005

Family Court, Monroe County
Amy M., Petitioner
against
Leland C., DEBORAH C., PAULA K., Respondents. In the Matter of a Proceeding under Article 6 of the Family Court Act, LELAND C. and DEBORAH C., Petitioner, -vs- PAULA K. and AMY M., Respondents.
In the Matter of a Proceeding under Article 6 of the Family Court Act,
LELAND C. and DEBORAH C., Petitioner, -vs-
against
PAULA K. and AMY M., Respondents.
V2438-04/04A

Amy M. by James E. Brown, Esq.
Leland and Deborah C. by Katherine Gladstone, Esq.
Anthony Leavy, Esq., Law Guardian

Marilyn L. O'Connor, J.
On November 12, 2004, Amy M., aunt and legal guardian of Thomas K. ("Tommy", born in late 2002), filed a petition to vacate a prior consent order of visitation with Mr. and Mrs. C., agreed to July 29, 2004.[FN1] Mr. and Mrs. C. are unrelated to Tommy, but Tommy's mother (Paula [*2]May K., hereinafter "Paula") had resided with them while she was pregnant and after Tommy's birth. Not long after Tommy's birth, Paula left Mr. and Mrs. C., entrusting Tommy to them pursuant to an informal notarized statement granting them "temporary and physical custody of my son, Thomas K., until such time this is revoked by me in writing [sic]." (emphasis added). On October 14, 2003, when Tommy was still less than one year old, Paula came to Family Court and filed the form necessary to support her sister Amy M.'s application to be appointed legal guardian for Tommy. Paula returned to Mr. and Mrs. C.'s home in February of 2004 to revoke custody and demand the return of her baby. She obtained physical custody of her baby over Mr. and Mrs. C.'s objection. This set off a flurry of contested litigation leading to the pending motion (1) to vacate the settlement order which granted Mr. and Mrs. C. visitation by consent and (2) to dismiss Mr. and Mrs. C.'s violation petition regarding that visitation, and for such other and further relief as to the court may seem just and proper.
PROCEDURAL HISTORY
On October 14, 2003, with Paula's formal consent, Amy M. ("Aunt Amy" or "legal guardian") filed her petition in Family Court to become Tommy's legal guardian. Mr. and Mrs. C. filed a petition for custody of Tommy four months later on Feb. 27, 2004.[FN2] On February 28, 2004, Paula signed both an informal document revoking custody to Mr. and Mrs. C. and another giving Aunt Amy "full temporary and physical custody" of Tommy. On or about March 5, 2004, Paula, with the help of the police, removed Tommy from the home of Mr. and Mrs. C. On March 8, 2004, Mr. and Mrs. C. filed an amended petition (with some new facts), still seeking custody. On March 17, 2004, after the usual background check and investigation, Aunt Amy obtained legal guardianship of Tommy by order of this Court.
On or before the April 1, 2004 return date on their custody petition, Mr. and Mrs. C. learned that letters of guardianship had already been granted by the court. When the case came on for trial on July 29, 2004, it was settled with a consent order agreed to by all parties, including the legal guardian Amy M., providing visitation to Mr. and Mrs. C. on the first and third Sundays of each month from noon until 6 PM.
On November 12, 2004, Aunt Amy filed a petition to end visitation, and Mr. and Mrs. C. responded with an answer and cross-petition, alleging a willful violation of the visitation order. Thereafter, Aunt Amy, the legal guardian, filed the pending motion. The court-appointed Law Guardian (i.e., attorney representing Tommy as opposed to day-to-day legal guardian of Tommy) supported the position of Mr. and Mrs. C., asserting that Tommy was bonded with them He opposed the dismissal of the violation petition, and alternatively sought a standing hearing. Decision was reserved on the motion to vacate the consent order and dismiss the violation petition filed by Mr. and Mrs. C.
 Aunt Amy's argument as Tommy's legal guardian is that the court had no legal authority to issue and enter an order of visitation, to non-relatives, even by consent. What must be decided here initially is whether the consent order giving visitation to non-relatives (1) must be vacated as a matter of law, and/or (2) alternatively, should be vacated as a matter of discretion. [*3]For reasons set forth below, the motion to vacate will be granted as a matter of law. Accordingly, the Mr. and Mrs. C. will no longer be entitled to visitation with Tommy. The court also notes that if the motion were not granted as a matter of law, the motion would be granted as a matter of discretion using the court's inherent authority over its own judgments.
STANDING
Because the issues here arise from an unsupervised private placement, no statute directly governs the decision, and analysis must proceed from common law principles as stated in the leading case, Bennett v Jeffreys (40 NY2d 543, 545). Parents do have the right to give formal, legal guardianship of their children to a willing person of their choice and many do so for a variety of reasons, temporarily or indefinitely. The process for establishing legal guardianships (Family Court Act, §§ 661-664; Surrogate's Court Procedure Act, §§ 1701-1727) was followed by Tommy's Aunt Amy at Paula's request and with her cooperation, but not by Mr. and Mrs. C. They never obtained Paula's permission to be the legal guardians for her son, nor was Tommy removed from his mother's care due to unfitness and/or neglect. There is no allegation that any neglect petition was ever filed against Paula. Paula's notarized note and resulting informal arrangement with Mr. and Mrs. C. made it clear that she reserved the right to have her son returned to her on demand, and of course, she has a constitutional right to parent her own child (Stanley v Illinois, 405 US 645; Griswold v. Connecticut, 381 US 479, 496; May v. Anderson, 345 US 528, 533; Skinner v. Oklahoma, 316 US 535, 541; Meyer v. Nebraska, 262 US 390, 399). Mr. and Mrs. C, acting as helpful friends, have no similar right to parent Paula's child. (Cf. Smith v Organization of Foster Families, 431 US 816, 844, 850, explaining limited rights of formal foster parents.)
Non-relatives on rare occasions may obtain custody of a child through custody litigation in the absence of a neglect proceeding, but only if they can establish "extraordinary circumstances" justifying the possibility of them getting custody (Bennett v Jeffreys, supra, p 544). Sometimes "the child's welfare compels awarding its custody to the nonparent" (People ex rel. Kropp v Shepsky, 305 NY 465, 469). Such "extraordinary circumstances" generally are based on the child having lived with the non-parents, who may or may not be relatives, for "an extended period of time" due to surrender, abandonment, persistent neglect, unfitness, unfortunate involuntary disruption of custody, or some equivalent. See Bennett v Jeffreys (40 NY2d 543, 546, supra). Under Bennett v Jeffreys, if "extraordinary circumstances" are established as a threshold issue in a contested custody case, the non-parents still have the burden of proving as a second step that it is in the child's "best interests" to have custody granted to them.[FN3] In contrast, regarding visitation, there is no statutory or case law even allowing non-relatives to sue for and obtain visitation. "Under New York statutory law, the only people who have the right to seek visitation are parents (Domestic Relations Law, § 70, 240), grandparents [*4](Domestic Relations Law, § 72, 240) and siblings related by whole or half-blood (Domestic Relations Law, § 71)." (Perry-Rogers v Fasano, 276 AD2d 67, 75.)
Matter of Ronald FF. v Cindy GG. (70 NY2d 141, 142) specifically holds, "Visitation rights may not be granted on the authority of the Matter of Bennett v Jeffreys (40 NY2d 543) extraordinary circumstances rule, to a biological stranger where the child, born out of wedlock, is properly in the custody of his mother." In Ronald FF. visitation granted to a non-biological, non-adoptive man was reversed. Of course, Tommy is in the lawful custody of a suitable legal guardian by his mother's choice, not in the custody of his mother. Ronald FF. (at p 144) warns against "casually extend[ing]" Bennett to visitation, and this court expressly declines to do so here. The Court of Appeals in Ronald FF. goes on to conclude (at p 144-145),
. . . our inquiry is directed solely to the States's power to interfere with the right of this mother to choose those with whom her child associates. The state may not interfere with that fundamental right unless it shows some compelling State purpose which furthers the child's best interests (see, Stanley v Illinois, 405 US 645, 651). (Emphasis added.)
In Ronald FF. (supra) continuing visitation with a non-biological, non-adoptive father figure of more than one year was not a compelling state purpose. No one in the case at bar has challenged the guardian's fitness to raise Tommy or the mother's fitness to name a guardian i.e., choose "those with whom her child associates". Indeed, by naming a fit guardian who passed judicial scrutiny, Paula demonstrated an ability to responsibly plan for the future of her child.
Legal guardians, such as Aunt Amy, have long been recognized by the law as proper custodians for children with rights essentially equivalent to those of parents. The United States Supreme Court in Troxel v Granville (530 US 57), the landmark case regarding grandparent visitation, recognized this in the year 2000. The United States Supreme Court stated (Troxel, at page 65),
The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." Washington v. Glucksberg, 521 U.S. 702, 719, 138 L. Ed. 2d 772, 117 S. Ct. 2258 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." 521 U.S. at 720; see also Reno v. Flores, 507 U.S. 292, 301-302, 123 L. Ed. 2d 1, 113 S. Ct. 1439 (1993).
 The liberty interest at issue in this case  the interest of parents in the care, custody, and control of their children  is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401, 67 L. Ed. 1042, 43 S. Ct. 625 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in Pierce v. Society of Sisters, 268 U.S. 510, 534-535, 69 L. Ed. 1070, 45 S. Ct. 571 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control.". . . .
In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). (Emphasis added.)
[*5]
In the case at bar, Paula, as mother, made the decision that her son Tommy should be legally in the care, custody and control of his aunt as guardian, a decision she unquestionably had the right to make. The legal guardian is fit and empowered to make such decisions on a day-to-day basis. That chosen legal guardian has decided Tommy should not have visitation with Mr. and Mrs. C. pursuant to the order. This court finds she has the right to make that decision and that the consent order to the contrary, giving visitation rights to non-relatives with no standing to seek them, although by consent, was improvidently agreed to and granted.
Upon careful consideration, the public policy and logic behind this legal dichotomy by which a non-relative has standing to sue for custody but not visitation is obvious. If a parent is so unfit that he or she cannot take care of a child, the interests of the child require that there must be a way for someone else to become legally charged with caring for that child in a custodial situationnot simply intermittently through visitation. (See People ex rel. Kropp v Shepsky, 305 NY 465, supra, quoted in Bennett v Jeffreys, 40 NY2d 543, 546-547, supra, for the principal "that parental custody is lost or denied not as a moral sanction for parental failure, but because 'the child's welfare compels awarding its custody to the nonparent'"). (Emphasis added.) Bennett v Jeffreys (40 NY2d, supra, at 545-546), states,
Absent extraordinary circumstances, narrowly categorized, it is not within the power of a court, or, by delegation of the Legislature or court, a social agency, to make significant decisions concerning the custody of children, merely because it could make a better decision or disposition. . . . Examples of cause or necessity permitting displacement of or intrusion on parental control would be fault or omission by the parent seriously affecting the welfare of a child, the preservation of the child's freedom from serious physical harm, illness or death, or the child's right to an education and the like.
Applying the above ruling, there is no evidence of necessity requiring the State's intrusion into Tommy's life regarding custodyor visitation.
As a general rule, when an alternative home is needed for a child's welfare, options include legal guardianships, foster care, and official placements with relative resources or friends under the supervision of the local welfare department. If a parent has voluntarily made suitable arrangements for a fit relative to care for his or her child and keep the child in the extended family by legal guardianship as here, it is not legally justifiable for a non-relative to have a right to visitation and thus an intrinsic right to interfere with the family. Similarly, if a legal guardianship with a non-relative has been established, it is not legally justifiable for some other non-relative to have a right to visitation. A "right" to visitation is a right to intermittently interrupt the care and custody provided by the natural parent, legal guardian chosen by the natural parent, or other lawful custodian. A right to visitation somehow vested in non-relatives would interfere with a parent's or legal guardian's right to raise the child or have the child raised by another of his or her choice. In theory, a non-relative with a right to visitation could even prevent the parent or legal guardian from moving out of the area, e.g., to marry, for a better job, or to live with other family members. (See Ronald FF, supra, where a non-father was ultimately denied the rights to prevent a mother from moving away with her child and to have notice before any such move.) Obviously, it would be utterly inappropriate for a non-relative to have such power over another person's life. Such possibilities illustrate how occasional or periodic visitation rights [*6]with non-relatives may seem in the short-term to be acceptable, but in the long run could prove to be completely unacceptable. Considering the possible problems which could arise from a right to visitation extended to non-relatives, it is little wonder that in the case at bar the visitation once agreed upon was no longer acceptable in reality after only a few months.
It is black letter law that parties to an agreement cannot confer jurisdiction on a court. Parties either have standing or they do not. (Goldman v Goldman, 282 NY 296; Matter of Newham v Chile Exploration Co., 232 NY 37; Howland v Howland, 15 AD2d 122.) Though the court may have wanted to assist the parties in a settlement by consent, it should not have done so and its order must be vacated. Therefore, there was no jurisdiction to render the visitation order/judgment. As such, this motion to vacate the order/judgment must be granted (CPLR 5015[a][4]). Furthermore, the motion to dismiss the Cross-Petition (Willful Violation) of Mr. and Mrs. C. seeking an order of contempt due to the guardian's refusal to abide by the visitation order is hereby granted, and further visitation will be suspended and denied at this time. INHERENT AUTHORITY
As an alternate basis for this ruling, this court notes that courts which can grant judgments also retain the inherent authority to vacate their own judgments. (Ladd v Stevenson, 112 NY 325; Melendy v City of New York, 271 AD2d 416; In re Delfin A., 123 AD2d 318, holding that a court can vacate its judgments, and that CPLR 5015 and Family Court Act, § 355.1, are only examples codifying some grounds for vacating judgments and are not exhaustive or limiting of the court's power.) In the case at bar, a young, struggling mother placed her baby with friends for several months with the express reservation that she could have him back on demand. She exercised that option and placed her baby with a responsible relative as his legal guardian, approved by the court. This court would, if necessary, exercise its inherent authority to vacate the consent judgment of visitation which is now no longer wanted by the legal guardian. The baby is young enough to forget Mr. and Mrs. C. over time if a voluntary relationship is not maintained, so there should be no lasting impact on Tommy. (Cf. People ex rel. Sibley v Sheppard, 54 NY2d 320, where maternal grandparent was awarded visitation, after adoption, with grandchild who had lived with her for 4 years, visited her for six years more and was old enough to comprehend the familial relationship and remember the maternal relatives over the years; Hatch ex rel. Angela J. v Cortland County Dep't of Social Servs., 199 AD2d 765, post-adoption sibling visitation may be granted, but was denied when the adopted child was only 19 months old when the limited visitation with her siblings ended.) Visitation with Mr. and Mrs. C should not be allowed to interfere with visitation with the mother, regular day-to-day activities, or future special plans of the legal guardian and/or Paula with Tommy.
DISMISSAL OF PETITION
The legal guardian's motion sought such other and further relief as to the court seems just and proper, and the court holds that in the interests of judicial economy, dismissal of the petition should be granted without further delay for two reasons. First, repeatedly throughout the court proceedings, counsel for Mr. and Mrs. C. clarified that they really wanted visitation, not custody. Their position in this regard was so clear that the Law Guardian, in his written response to the pending motion, called their petition one for "visitation". As Mr and Mrs. C. have no standing to seek visitation, the petition, if considered to have been orally amended to seek visitation only, has no merit and must be dismissed.
[*7]
Secondly, a review of the amended petition as written (filed March 8, 2004), using the standard form petition, shows that it fails to make the necessary allegation that "extraordinary circumstances" exist which might entitle Mr. and Mrs. C., as non-relatives, to custody. The amended petition only alleges that it is in the child's best interests for various reasons to be in their custody. (The original petition filed on February 27, 2004, also fails to allege "extraordinary circumstances.") Thus, as non-relatives, their petition is facially insufficient for failing to allege "extraordinary circumstances" and should be dismissed, without prejudice, for failure to state a cause of action.
NOW THEREFORE, it is
ADJUDGED that the relevant facts needed for a decision on standing are not in dispute and therefore there is no need for a hearing as to the standing of Mr and Mrs. C. to seek visitation; and it is further
ADJUDGED that Mr. and Mrs. C. did not have standing to seek visitation with Thomas K.; and it is further
ORDERED that the legal guardian's motion to vacate the Consent Order of Visitation, made in open court and signed in 2004, is granted, and the Consent Order of Visitation is hereby vacated; and it is further
ORDERED that the legal guardian's motion to dismiss the Cross-Petition (Willful Violation) of Mr. and Mrs. C. seeking to enforce the visitation and to have the legal guardian held in contempt is granted, and the Cross-Petition is dismissed; and it is further
ORDERED that the petition of Mr. and Mrs. C., as amended, is dismissed.
DATED: June 20, 2005
Rochester, NY_________________________________
 MARILYN L. O'CONNOR
 FAMILY COURT JUDGE
NOTICE: Pursuant to section 1113 of the Family Court Act, an appeal must be taken within thirty days of receipt of the order by appellant in court, thirty-five days from the mailing of the order to the appellant by the clerk of the court, or thirty days after service by a party or law guardian upon the appellant, whichever is earliest.
Mailed: James E. Brown, Esq., Katherine Gladstone, Esq., Anthony Leavy, Esq.
Footnotes

Footnote 1: Tommy's father is unknown.

Footnote 2: Although the Law Guardian's brief describes Mr. and Mrs. C.'s petition as a visitation petition, both the original petition and the amended petition, at paragraph 11, indicate they sought custody, not visitation.

Footnote 3: In Bennett, a 15-year-old gave birth to a baby girl who was placed informally with an unrelated friend of the maternal grandmother, and after the child was old enough to be in grade school, the mother finally petitioned for the return of her daughter. Because of the passage of so many years, extraordinary circumstances was found. When the daughter was initially returned to the mother at the age of seven, she failed to thrive. She continued to want to return to live with the de facto mother, and upon remand, the best interest determination resulted in the mother losing custody.